NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| RAUL MAGANA-HERRERA,<br><br>                Petitioner,<br><br>        v.<br><br>WARDEN, FCI FORT DIX,<br><br>                Respondent. | Civil No. 25-5848 (RMB)<br><br>OPINION |

**BUMB, CHIEF DISTRICT JUDGE**

This matter was opened before the Court upon Petitioner Raul Magana-Herrera's filing of a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on May 23, 2025. ("Petition"), Dkt. No. 1.  First, Petitioner argues he is statutorily eligible for prerelease custody placement under the First Step Act ("FSA") ("Petr's Mem.") Dkt. No. 1-1 at 4-6. Second, Petitioner submits BOP's detainer exclusion policy violates the Administrative Procedures Act ("APA") because it was not promulgated through notice and comment procedures under 5 U.S.C. § 553, and constitutes an unlawful agency action under 5 U.S.C. § 706(2)(A). *Id.* at 6.  Third, in his reply brief and supplemental motion ("Petr's Reply") Petitioner contends BOP ignored memoranda issued by its own Director in May and June 2025, which mandated immediate placement of eligible inmates in home confinement, and he

1

claimed a due process right to immediate release to home confinement Petr's Reply Dkt. No. 14-1 at 2. Finally, in his consolidated reply brief ("Petr's Consol. Reply"), Petitioner urged the Court, pursuant to *Loper Bright Enterprises v. Raimondo* ("*Loper Bright*"), 603 U.S. 369 (2024), not to give deference to BOP's statutory interpretation of the FSA. Petr's Consol. Reply, Dkt. No. 18 at 4. He also asserts due process and equal protection challenges to BOP's refusal to apply FSA time credits toward his prerelease custody or home confinement. *Id.* at 5-6. For the reasons discussed below, the Court will **grant the Petition in part**, and order BOP to conduct, in good faith, an individualized determination of the prerelease custody placement factors pursuant to 18 U.S.C. § 3621(b) for Petitioner's placement in prerelease custody.

I. **PROCEDURAL HISTORY**

On June 2, 2025, Petitioner filed an emergency motion for immediate release pending habeas determination, seeking immediate release to home confinement ("HC") or a residential reentry center ("RRC"), for which he alleges eligibility as early as June 21, 2024, pursuant to the FSA ("Emergency Motion"), Dkt. No. 2. On June 6, 2025, the Court ordered Respondent to file an expedited answer to the petition and denied without prejudice Petitioner's emergency motion. Order, Dkt. No. 3.

On June 9, 2025, Petitioner filed an Emergency Motion to Stay Transfer and Enforce Court's Jurisdiction Pending Resolution of § 2241 Petition ("Mot. For Stay"), Dkt. No. 6. The Court denied Petitioner's motion for a stay. Order, Dkt. No. 10.

On June 13, 2023, Respondent filed a Response to the Petition for Writ of Habeas Corpus ("Answer"), Dkt. No. 13. Respondent argues the Court should dismiss or deny the petition on two independent grounds. *Id.* at 16, 21. First, Petitioner failed to properly exhaust his administrative remedies, resulting in procedural default that bars judicial review. *Id.* at 16. Second, neither the FSA nor the Constitution entitles inmates to placement in an RRC or HC; such placements are within the BOP's discretion. *Id.* at 21. Thus, Respondent contends that the BOP lawfully exercised that discretion by denying prerelease custody based on Petitioner's active immigration detainer, consistent with longstanding policy. *Id.* at 4.

On June 18, 2025, Petitioner submitted a Reply and Supplemental Motion for Immediate Release ("Petr's Reply"), Dkt. No. 14. Petitioner asserts BOP officials ignored directives from their own Director on May 28, 2025 and June 17, 2025, which "mandate the immediate placement of eligible inmates into home confinement regardless of detainer status, unless a final order of removal exists." ("Petr's Reply Mem.") Dkt. No. 14-1 at 2. Petitioner claims a due process right to immediate release to home confinement based on his "earned release date of May 12, 2024." *Id.*, 14-1 at 12. Petitioner states Respondent's answer to the petition made no mention of the recent memoranda from the BOP Director. *Id.* at 1-2. Based on this omission, the Court issued an order to show cause, directing Respondent to file a written submission setting forth why Petitioner should not be immediately transferred to prerelease custody. Order to Show Cause, Dkt. No. 15. The same day, Petitioner filed a Notice of Supplemental Authority ("Notice"), Dkt.

3

No. 16. He contends the Director's memoranda supersede the outdated BOP Program Statement 7310.04. *Id.* In sum, Petitioner contends he must immediately be released to home confinement based on: (1) the recent new policies announced in the BOP memoranda and (2) a statutory analysis of 18 U.S.C. §§ 3632(d)(4)(C) and 3624(g) without deference to agency interpretations under *Loper Bright. Id.* at 2-3.

On July 7, 2025, Respondent filed a brief in response to the Court's Order to Show Cause ("Respt's Brief"), Dkt. No. 17. Respondent argues that the BOP retains broad discretion under 18 U.S.C. §§ 3621(b) and 3624(c) to determine inmate placements, including eligibility for prerelease custody such as RRCs or HC. *Id.* at 1-3. Respondent contends that the above-referenced BOP memoranda do not displace Program Statement 7310.04, which excludes inmates with immigration detainers from RRC eligibility. *Id.* at 7-10. Finally, Respondent submits that *Loper Bright* does not affect the BOP's discretion, as the challenged policy stems from a valid exercise of delegated authority, not statutory interpretation. *Id.* Accordingly, Respondent argues Petitioner is not entitled to application of FSA time credits to HC or RRC placement, and the BOP determination should not be disturbed. *Id.*

On July 10, 2025, Petitioner filed a Consolidated Reply to Respondent's Answer and Memorandum in Response to the Court's Order to Show Cause ("Petr's Consol. Reply"), Dkt. No. 18. Petitioner urges the Court to interpret the FSA without deferring to inconsistent agency interpretations under *Loper Bright. Id.* at 4. Petitioner maintains that the BOP erred by following a January 30, 2025 memorandum while ignoring the more authoritative June 17, 2025 memorandum

4

signed by the BOP Director. *Id.* at 2. Petitioner also raises several constitutional claims under the Fifth Amendment Due Process Clause. *Id.* at 5-6. Accordingly, Petitioner requests immediate release to HC or RRC, or alternatively, release into ICE custody under 18 U.S.C. § 3632(d)(4)(E)(ii), so that he may participate in removal proceedings. *Id. at 6-7.* Petitioner subsequently filed two motions for a ruling ("Mot. for Prompt Ruling") Dkt. No. 21 and ("Mot. for Immediate Ruling,") Dkt. No. 22.

## II. BACKGROUND

### A. The First Step Act

Under the FSA, one of the incentives for federal prisoners to successfully participate in recidivism-reduction programming is that it allows inmates to earn time credits. 18 U.S.C. § 3632(d)(4)(A). Inmates can earn 10 or 15 days of time credits for every 30 days they "successfully participate" in BOP-assigned programming, depending on their risk of recidivism. *Id.*

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C).[1] The FSA further states "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3). "Thus, the time credits may be used to transfer a prisoner into prerelease custody earlier than he otherwise would be and to release the prisoner to supervised release up to 12 months earlier than he would be." *Malik v. Warden Loretto FCI*, No. 23-2281, 2024 WL 3649570, at *1 (3d Cir. Aug. 5, 2024).

    **B.**     **BOP's Application of Petitioner's FSA Time Credits**

The BOP determined Petitioner is eligible to earn time credits under the FSA and applied 365 days of time credits toward his early transfer to supervised release. Declaration of Bianca Shoulders ("Shoulders Decl." Dkt. No. 13-2) ¶¶ 10-11, 14 and Attach. 1 at 2. This resulted in Petitioner's projected FSA release date of May 7, 2026. *Id.* ¶ 13, Attach. 1 at 2, Attach. 4 at 3. Petitioner also earned 730 days of credit that BOP could apply toward prerelease custody. *Id.* ¶ 11, Ex. 4 at 3. When so applied, Petitioner would be eligible for prerelease custody on May 7, 2024, his "FSA Conditional Placement Date" and "Conditional Transition to Community Date." *Id.*

---

[1] *See also* 28 C.F.R. § 523.44(a)(1), "the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section."

6

On February 20, 2025, Petitioner's unit team reviewed him for RRC placement. Shoulders Decl. ¶ 12, Attach. 5 at 3. The unit team considered the five factors set out in 18 U.S.C. § 3621(b): (1) the resources of the facility contemplated; (2) the nature and circumstances of the inmate's offense; (3) the history and characteristics of the inmate; (4) any statement of the sentencing court (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted, or (b) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the U.S. Sentencing Commission. *Id.*, Attach. 5 at 3. The unit team determined that Petitioner is not eligible for RRC placement because he "is expected to be deported to his country of origin upon release." *Id.* ¶ 12, Attach. 5 at 3.

## III.   DISCUSSION

### A.   Jurisdiction Under 28 U.S.C. § 2241

A federal prisoner may seek habeas relief under 28 U.S.C. § 2241(c)(3) if he is "in custody in violation of the Constitution or laws or treaties of the United States." The Third Circuit has addressed the boundary of this jurisdictional category in *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005).[2] There, the court

---

[2] The Third Circuit has not addressed, in a precedential decision, whether a district court has jurisdiction under 28 U.S.C. § 2241 to address a federal prisoner's challenge to BOP's determination that it has discretion under the FSA to decline to apply time credits toward prerelease custody if the prisoner is subject to an immigration detainer. *See Miles v. Arviza*, No. 3:24-CV-2252, 2025 WL 981870, at *3 (M.D. Pa. Apr. 1, 2025) (discussing confusion of the jurisdictional boundaries of execution of sentence claims raised in § 2241 petitions in this Circuit).

held that a prisoner's challenge to BOP's categorical policy limiting placement in community correctional centers [now called residential reentry centers] was cognizable under § 2241. *Id.* at 243-44. The Third Circuit concluded that such a claim concerned the execution of the sentence because it went to the place of confinement—a factor materially affecting how the sentence was carried out. *Id.* at 243.

In distinguishing between claims challenging the fact or duration of custody, which are core habeas claims, and those merely challenging conditions of confinement, which are not cognizable under § 2241, the Third Circuit emphasized that a claim implicating a statutory right to a particular placement can support habeas jurisdiction, even if it does not alter the length of the sentence. *See id.* ("Carrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution. More specifically, the manner in which a sentence is served is an issue distinct from the sentence itself.")

Accordingly, § 2241 jurisdiction is available where the petitioner challenges the BOP's denial of placement in a prerelease setting such as an RRC or HC, provided that the claim is grounded in an alleged misapplication of federal law—such as the FSA's earned time credit provisions—or, as in *Woodall*, an improper categorical refusal to consider statutory placement factors under 18 U.S.C. § 3621(b). *See id.* at 244 (noting that failure to consider the § 3621(b) factors is judicially reviewable); *see also Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012) (stating "Vasquez may resort to federal habeas corpus to challenge a decision to limit his

RRC placement" where the issue was whether BOP abused its discretion under the controlling statute).

By contrast, the Third Circuit rejected § 2241 jurisdiction where the petitioner alleged the BOP's referral of him to the prison's Special Management Unit was a pretextual attempt to punish him for his history of litigation. *See Cardona v. Bledsoe*, 681 F.3d 533, 534 and n. 1 (3d. Cir. 2012). The key distinction appears to be whether the prisoner's claim invokes a statutory entitlement to a particular placement, not solely whether the BOP's determination conflicted with the sentencing court's judgment, as in *Cardona*. Petitioner's claims are akin to *Woodall* because he challenges the execution of his sentence, where he will serve the final portion of his sentence, based on a claim of statutory entitlement to prerelease custody. *See*, *e.g.*, *Colotti v. Peters*, No. 25-1191, 2025 WL 1321386, at *2 (3d Cir. May 7, 2025) (affirming district court's denial on the merits of § 2241 habeas petition challenging BOP's statutory analysis of eligibility for application of time credits under the FSA). Therefore, this Court has jurisdiction.

      B.    **Exhaustion of Administrative Remedies**

Typically, prisoners are required to exhaust administrative remedies prior to filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is excused "where the issue presented involves only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012). The Court will exercise jurisdiction over Petitioner's claim that BOP's categorical bar of application of FSA time credits toward his prerelease

9

custody based on his immigration detainer violates the FSA. Petr's Mem., Dkt. No. 1-1 at 4.

In his various filings, Petitioner raised constitutional and other claims, including violation of the APA rulemaking provisions. He contends that he exhausted administrative remedies that were available to him. Petition at 2-3. Respondent argues the rejection of Petitioner's appeals to the Regional Director and Central Office do not constitute exhaustion. Answer, Dkt. No. 13 at 19-20.

The exhibits Petitioner submitted with his Petition show that he was directed to resubmit his BP-10 appeal to the Northeast Regional Office because the appeal was untimely and the signature was missing. Exhibits to Petition, Dkt. No. 1-2 at 10. The resubmission was due in 10 days. *Id.* The rejection notice was dated April 9, 2025, and it was postmarked April 11. *Id. at 10-11.* The rejection notice was postmarked April 11, 2025. *Id.* at 11. Rather than resubmitting to the Northeast Regional Office, Petitioner filed an appeal to the Central Office, asserting that he did not receive the rejection notice until April 17, and his unit counselor refused to provide him with a memo explaining why his appeal was untimely, rendering his resubmission to the Northeast Regional Office futile. *Id.* at 12. The Central Office, however, directed Petitioner to resubmit his BP10 to the Regional Office with a copy of the notice from the Central Office. *Id.* at 13. Therefore, there was a remedy available to Petitioner, and he chose to file his habeas petition without exhausting administrative remedies. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can

function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91.  The Court will address the issue of statutory construction, which Petitioner was not required to exhaust, and dismiss the remaining claims without prejudice for failure to exhaust available administrative remedies.

### C. Statutory Construction of FSA

#### 1. Legal Standard

Deference to agency interpretations of ambiguous statutory provisions is no longer the law. *Loper Bright*, 603 U.S. at 396. In *Loper Bright*, the Supreme Court held "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id.* at 412. Furthermore, "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it." *Id.* at 413. Agency "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Id.* at 394 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, (1944)).

A court's task "is to interpret the words Congress enacted consistent with their ordinary meaning." *Bondi v. VanDerStok*, 604 U.S. -- --, 145 S. Ct. 857, 871 (2025) (citation modified). It is also "a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the

overall statutory scheme." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022) (citation modified).

        2.     *Analysis*

Petitioner asserts he is statutorily eligible for application of FSA time credits under the plain language of the statute. Petition, Dkt. No. 1-1 at 5. 18 U.S.C. § 3632(d)(4)(E)(i) provides "[a] prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws[.]" Petitioner is correct insofar as the plain language of the statute renders only noncitizens who are subject to final orders of removal ineligible to apply FSA time credits. *See Adepoju v. Scales*, 782 F. Supp. 3d 306, 319 (E.D. Va. 2025) ("it is evident that Congress considered which classes of deportable prisoners would be ineligible to apply time credits[.]") The question remains whether the statute mandates BOP to apply time credits toward a prisoner's prerelease custody if it has applied time credits toward the prisoner's early supervised release.

Application of FSA time credits is governed by 18 U.S.C. § 3632(d)(4)(C), which provides:

> Application of time credits toward prerelease custody or supervised release.--Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

As this provision suggests, Petitioner points to 18 U.S.C. § 3624(g) to determine when BOP must transfer eligible inmates into prerelease custody. Petition, Dkt. No. 1-1 at 5. Petitioner contends subsection (g)(2)(B) mandates that a prisoner shall be placed in prerelease custody (RRC or HC) when he earns sufficient time credits. *Id.* This subsection, however, governs "Prerelease custody *or* supervised release for risk and needs assessment system participants." § 3624(g) (emphasis added). Subsection (g)(1)(D)(1) applies "in the case of a prisoner being placed in prerelease custody" and subsection (g)(1)(D)(2) applies "in the case of a prisoner being placed in supervised release." § 3624(g)(1)(D)(1, 2). Neither provision answers whether BOP should apply FSA time credits toward prerelease custody or supervised release.

Respondent submits that the FSA does not entitle inmates to placement in an RRC or HC; such placements are within the BOP's discretion under Section 3621(b). Answer, Dkt. No. 13 at 23-30. This argument finds some support in the statutory language; BOP has discretion to apply time credits toward supervised release or prerelease custody. §§ 3624(c), (e), 3632(d)(4)(C).[3] Here, BOP applied the maximum allowable time credits toward Petitioner's supervised release, but he earned many

---

[3] The Court disagrees with Respondent's contention that discretion to revoke a prisoner's prerelease custody under § 3624(g)(5) and discretion to determine appropriate conditions of prerelease custody under § 3624(g)(2) suggest Congressional intent to permit BOP to categorically deny prisoners with immigration detainers from placement in prerelease custody, in light of Congress maintaining the placement factors under § 3621(b) when the FSA amended the Second Chance Act. Answer, Dkt. No. 13 at 23-24.

13

more time credits than could be applied toward supervised release. Shoulders Decl. ¶ 11 and Ex. 4 at 3.

What of Petitioner's remaining time credits? If the time credits are not applied toward early supervised release does the FSA mandate BOP to apply the time credits toward prerelease custody? A number of courts have interpreted § 3632(d)(4)(C) to mandate that *all* earned time credits must be applied *either* toward early supervised release *or* toward prerelease custody because there is no statutory cap on time credits applied toward prerelease custody. *See Mohammed v. Engleman*, No. 2:25-CV-01011-MWC-MBK, 2025 WL 1909836, at *13 (C.D. Cal. July 9, 2025), *report and recommendation adopted*, No. 2:25-CV-01011-MWC-MBK, 2025 WL 2294325 (C.D. Cal. Aug. 8, 2025); *see Mateo v. Warden, FCI Danbury*, No. 3:25-CV-00814 (VAB), 2025 WL 2625263, at *8 (D. Conn. Sept. 11, 2025) ("The BOP's decision" to deny application of time credits in excess of those applied to supervised release "conflicts with the First Step Act's express language: time credits "shall be applied toward time in prerelease custody or supervised release."); *Williams v. Warden, FCI Berlin*, No. 23-CV-509-LM-AJ, 2025 WL 2207024, at *5 (D.N.H. Aug. 4, 2025) ("Because the [BOP] memoranda purport to cap the application of Williams's time credits and deny him the ability to apply time credits toward placement in prerelease custody on the basis of an ineligibility criterion that does not appear in the FSA, the memoranda violate the FSA.")

Reading § 3632(d)(4)(C) to mandate BOP to place in HC or RRCs those eligible prisoners with excess time credits would nullify § 3624(c)(4), which provides

"No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." Pursuant to 18 U.S.C. § 3621(b), "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]" Therefore, this raises the issue whether, subject to this broad discretionary authority under § 3621(b), BOP may categorically deny application of FSA time credits toward prerelease custody to prisoners with immigration detainers.

The Third Circuit, in a nonprecedential decision, held that "a foreign citizen assigned a 'deportable alien' public safety factor on whom Immigration and Customs Enforcement has a detainer, is ineligible to use earned time credits for immediate release to residential re-entry programs or home confinement, pursuant to BOP regulations. *Pisman v. Warden Allenwood FCI Low*, No. 23-2048, 2023 WL 6618238, at *1 (3d Cir. Oct. 11, 2023) (per curiam). *Pisman*, however, preceded the Supreme Court determination in *Loper Bright* that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." This Court is no longer required to give the same deference to BOP regulations as before *Loper Bright*. Yet *Pisman* is instructive because it relied on the Supreme Court's recognition that "[w]hen a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over the place of the prisoner's imprisonment." *Pisman*, 2023 WL 6618238, at *1 (quoting *Tapia v. United States*, 564 U.S. 319, 331 (2011)).

15

There is a statutory constraint on the BOP's plenary control over the place of the prisoner's imprisonment. Section 3621(b) requires the BOP to determine the appropriate and suitable placement by considering--

>(1) the resources of the facility contemplated;
>
>(2) the nature and circumstances of the offense;
>
>(3) the history and characteristics of the prisoner;
>
>(4) any statement by the court that imposed the sentence—
>
>>(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>(B) recommending a type of penal or correctional facility as appropriate; and
>
>(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

BOP Program Statement 7310.04(10)(f) ("PS 7310.04") states "[i]nmates in the following categories shall not ordinarily participate in CCC programs."[4] Use of the word "ordinarily" does not support a categorical exclusion without consideration of the other statutory factors governing a prisoner's placement. Indeed, PS 7310.04 acknowledges that the statutory authority for the policy includes authority under § 3621(b) to "designate any available penal or correctional facility . . . the Bureau determines to be appropriate and suitable." *Id.* at ¶ 5. Further, PS 7310.04 states "it is essential that unit staff carefully review relevant statutory and regulatory criteria before an inmate's final release under 18 U.S.C. § 3261(e)."

---

[4] Available at https://www.bop.gov/policy/progstat/7310_004.pdf.

Here, Petitioner's Individual Needs Plan Program Review, dated February 20, 2025, shows that "[c]onsideration has been given for Five Factor Review (Second Chance Act)." However, after each of the five factors, it is repeatedly stated that "[innmate is expected to be deported to his country of origin upon release" although this is not relevant to each factor. Shoulders Decl. ¶ 12, Attach. 5 at 3. Similarly, when the warden denied Petitioner's administrative remedy request, she relied on an updated BOP memorandum that categorically canceled all RRC referrals "in all cases where a detainer is lodged and includes cases where a final order of deportation has not been issued." Exhibit to Petition, Dkt. No. 1-2 at 6 ("Remedy No. 1228633-F, Part B Response").

In *Woodall*, the Third Circuit held that the Second Chance Act "indicates that the BOP may place a prisoner where it wishes, so long as it considers the factors enumerated in § 3621." 432 F.3d at 245. In *Woodall*, a regulation that precluded the BOP from considering all statutory factors was invalid. *See Mateo*, 2025 WL 2625263, at *10 (citation modified) ("categorical rulemaking done under a grant of broad discretion must still track or effectuate legislative text.") The FSA expanded prisoners' opportunity for earlier placement in prerelease custody, from what was provided in the Second Chance Act, by creation of a system to incentivize prisoners to participate in and complete recidivism risk reduction programs and productive activities. *See* 18 U.S.C. § 3621(h). Congress did so while leaving in place BOP's authority to designate a prisoner's placement, when determined appropriate and suitable after consideration of the factors enumerated in § 3621(b).

In *Woodall*, the Third Circuit determined the appropriate relief when BOP did not make an individualized determination after consideration of the § 3621(b) factors was "an order requiring the BOP to consider—in good faith—whether or not Woodall should be transferred to a CCC." *Id.* at 251. Thus, the remedy here is the same. BOP must consider, in good faith, all statutory factors in § 3621(b) in determining whether Petitioner is appropriate for application of FSA time credits toward prerelease custody. If he is found suitable, Petitioner is immediately eligible for prerelease custody, therefore, BOP must make its determination within seven days. To establish good faith consideration of the statutory factors, BOP shall submit its assessment of those factors to this Court within ten days.

### IV. CONCLUSION

For the reasons discussed above, the Petition is granted in part and dismissed without prejudice in part. The pending motions for a ruling will be dismissed as moot. An appropriate order follows.

Dated: October 10, 2025

s/Renée Marie Bumb  
**RENÉE MARIE BUMB**  
**Chief United States District Judge**